IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| WACKER CHEMICAL CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;<br>L. FRANCIS CISSNA,<br>Director, U.S. Citizenship and Immigration Services, in his Official Capacity; KEVIN K. MCALEENAN, Acting Secretary, U.S. Department of Homeland Security, in his Official Capacity; LAURA B. ZUCHOWSKI, Director, Vermont Service Center, in her Official Capacity, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security; and<br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendants.* | Civil Action No. 1:19-cv-00129<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

**INTRODUCTION**

1. Plaintiff, Wacker Chemical Corporation ("Wacker") challenges the Defendants' arbitrary and unlawful decision to deny its petition for nonimmigrant "H-1B" immigration status and accompanying request for consular notification for a valued, highly educated and skilled foreign-born employee.

2. Wacker is a United States-based subsidiary of Wacker-Chemie A.G., a Germany-based multinational chemical company. The company established operations in the United States in 1987 and now has substantial facilities in Adrian, Michigan; Allentown, Pennsylvania; Calvert City, Kentucky; Chino, California; Eddyville, Iowa; and North Canton, Ohio. The

1

company has also established Wacker Polysilicon North America, LLC (WPNA) as a subsidiary to build and operate in Charleston, Tennessee, near Cleveland/Chattanooga, a new facility to produce hyperpure polycrystalline silicon used by industry in the manufacture of solar panels and photovoltaic devices. The company has invested $2.5 billion in this facility, which employs 650 people. Wacker employs over 1,500 workers, the overwhelming percentage of whom are United States workers spread across 6 facilities.

3. Wacker currently employs Mr. Bevinaguddaiah Ramakumar Channaiahnapalya, a native of India and citizen of Canada, in the United States.

4. Wacker seeks to continue the employment of Mr. Channaiahnapalya using the H-1B classification. As described in its initial petition to U.S. Citizenship and Immigration Service ("USCIS"), which was filed on April 1, 2018, Wacker wishes to continue to employ Mr. Channaiahnapalya as a Support Engineer-MES (Manufacturing Execution Systems) to support logistic and production process IT (Information Technology) MES applications for manufacturing automation and data acquisition, and monitor, support, and maintain manufacturing applications at the facility in Charleston, Tennessee. Classified in the Computer Systems Analyst occupation, the position requires attainment of at least a Bachelor's degree in Computer Science or related field. *See* **Exhibit 1** (Complete H-1B filing submitted to USCIS).

5. USCIS issued a Request for Evidence (RFE) on August 29, 2018, and called for additional evidence that the position offered to the beneficiary met the requirements of a specialty occupation. *See* **Exhibit 2** (August 29, 2018 Notice from USCIS). Wacker submitted a timely response to the RFE. *See* **Exhibit 3** (Complete RFE response submission). Along with a range of documentary evidence, Wacker attached a detailed support letter that provided a more detailed explanation of the beneficiary's proposed day-to-day responsibilities and the

2

company's minimum requirements for the role, and also demonstrated that the position clearly qualified as a specialty occupation as defined under Section 101(a)(15)(h)(i)(b) of the Immigration and Nationality Act and 8 U.S.C. Section 1101(a)(15)(H)(i)(B).

6. On December 27, 2018, USCIS denied the H-1B petition on the sole ground that the evidence in the record did not establish that the job offered qualifies as a specialty occupation under Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act. *See* **Exhibit 4** (December 27, 2018 USCIS Decision).

7. USCIS's denial of the petition is unsupported by the substantial evidence in the record. The decision is arbitrary and capricious, an abuse of its discretion, and not in accordance with the law.

8. Wacker seeks an order overturning the denial and requiring USCIS to adjudicate and approve its H-1B nonimmigrant petition on behalf of Mr. Channaiahnapalya.

## JURISDICTION AND VENUE

9. This is a civil action brought under 5 U.S.C. § 701 et seq., the Administrative Procedure Act ("APA"), and 8 U.S.C. § 1101 et seq., the Immigration and Nationality Act ("INA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question subject matter jurisdiction), and 28 U.S.C. § 1361. This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702, and 28 U.S.C. § 1361. The United States waives sovereign immunity under 5 U.S.C. § 702.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1)(B), because this is a civil action in which the Defendants, respectively, are an agency of the United States and officers of the United States acting in their official capacity, and a substantial part of the events or omissions occurred in this jurisdiction because the harm suffered by Wacker – the

inability to fill a specialty occupation with a specialized employee of its choice -- occurred within the Eastern District of Tennessee.

11. The USCIS decision deprives the Charleston, Tennessee facility of valued, highly educated, and skilled labor integral to the success of its operations. Mr. Channaiahnapalya must provide critical support and direction for the "Fine Sieve Project" based in Charleston, Tennessee, and the specific requirements of the project to which Mr. Channaiahnapalya is assigned cannot be performed in any other location outside of the Charleston, Tennessee worksite because this is the only Wacker site in the United States conducting such operations. Without Mr. Channaiahnapalya's critical services, provided in a timely manner, Wacker would be required to hire and train a consultant to perform the duties of the IT Support Engineer-MES position, which would potentially require 28+ weeks of training time plus nearly $100,000 in costs. Wacker would suffer loss of profit and the possibility of interrupting production should there be any disruption or delay to Mr. Channaiahnapalya's employment with Wacker.

## EXHAUSTION OF REMEDIES

12. Defendant USCIS's December 27, 2018 denial of Plaintiff's H-1B Petition constitutes final agency action under the APA, 5 U.S.C. § 701, *et seq*. Neither the INA nor implementing regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial. Accordingly, Plaintiff has no administrative remedies to exhaust.

## PARTIES

13. Plaintiff is a Delaware corporation headquartered in Adrian, Michigan, with its principal office at 3301 Sutton Road, Adrian, Michigan 49221.

14. Defendant USCIS is a component of the U.S. Department of Homeland Security ("DHS"), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).

USCIS adjudicates petitions for immigration benefits and denied the nonimmigrant petition filed on behalf of Mr. Channaiahnapalya. USCIS can be served with process through the Office of the General Counsel, 245 Murray Lane, SW, Mail Stop 0485, Washington, DC 20528-0485.

15. Defendant L. Francis Cissna is the Director of USCIS. He has ultimate responsibility for the denial of petitions and is sued in his official capacity. Defendant Cissna can be served with process through the Office of the General Counsel, 245 Murray Lane, SW, Mail Stop 0485, Washington, DC 20528-0485.

16. Defendant Kevin K. McAleenan is the Acting Secretary of the Department of Homeland Security ("DHS"), the federal agency encompassing USCIS, which is responsible for administration and enforcement of the immigration and nationality laws of the United States. Defendant McAleenan is sued in his official capacity. Defendant McAleenan can be served with process through the Office of the General Counsel, 245 Murray Lane, SW, Mail Stop 0485, Washington, DC 20528-0485.

17. Defendant Laura B. Zuchowski is the Director of the Vermont Service Center and she signed the denial at issue in this case. As Director of the Vermont Service Center, Ms. Zuchowski is responsible for the overall administration of the USCIS Vermont Service center, including the adjudication of visa petitions, such as the H-1B petition filed by Wacker. Defendant Zuchowski is sued in her official capacity. Defendant Zuchowski can be served with process through the Office of the General Counsel, 245 Murray Lane, SW, Mail Stop 0485, Washington, DC 20528-0485.

18. Defendant U.S. Department of Homeland Security ("DHS") is a cabinet department of the U.S. federal government responsible for immigration-related services, enforcement, and investigations. DHS oversees USCIS and its implementation of federal law

and policy with respect to immigration benefit applications. DHS can be served with process through the Office of the General Counsel, 245 Murray Lane, SW, Mail Stop 0485, Washington, DC 20528-0485.

## LEGAL BACKGROUND AND FRAMEWORK

*H-1B Petition Process*

19. Section 101(a)(15)(H)(i)(b) of the INA provides for the admission into the United States of temporary workers sought by petitioning U.S. employers to perform services in a specialty occupation. 8 U.S.C. § 1101(a)(15)(H)(i)(b). This nonimmigrant classification is commonly referred to as "H-1B."

20. A "specialty occupation" is one that requires the "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i).

21. DHS regulations define specialty occupation to mean "an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States." 8 C.F.R. § 214.2(h)(4)(ii).

22. Implementing regulations at 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4) further provide that a position will satisfy the statutory definition of specialty occupation if it meets one of the following criteria:

- A baccalaureate or higher degree or equivalent is normally the minimum requirement for entry into the particular position;

- The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can only be performed by an individual with a degree;

- The employer normally requires a degree or equivalent for the position; or

- The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with attainment of a baccalaureate or higher degree.

## **FACTUAL ALLEGATIONS**

23. Wacker confirmed in its original H-1B petition that the position offered to Mr. Channaiahnapalya met the statutory requirements for a specialty occupation. In its initial letter of support included with the 2018 H-1B Petition, Wacker set forth information concerning: the company background; the complexity of the IT Support Engineer-MES position and its accompanying responsibilities; the requirement of a bachelor's degree in computer science or a related field as a minimum for entry into the position; Mr. Channaiahnapalya's master's degree in computer integrated manufacturing, post graduate diploma in business administration, and bachelor of engineering degree; and Mr. Channaiahnapalya's professional experience in information technology, business, manufacturing, business analysis, and quality assurance domain, all directly related to the specialized duties demanded of the proffered H-1B position.

24. In particular, in its RFE response, Wacker submitted evidence that the IT Support Engineer-MES position met the following regulatory criteria for being within a specialty

7

occupation: (1) a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) the degree requirement is common to the position in parallel positions among similar organizations; (3) the employer normally requires a degree or its equivalent for the position; and (4) the nature of the specific duties are so complex and specialized that knowledge required to perform the duties is associated with the attainment of a baccalaureate degree. *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(1), (2) (the first alternative), (3), and (4). Any one of these, standing alone, demonstrated that the position was a specialty occupation.

25. Wacker's RFE response included evidence from the Department of Labor's Occupational Outlook Handbook (OOH), a publication routinely consulted by USCIS and its adjudicators for information about the duties and educational requirements for particular occupations, confirming that with respect to the requested Computer Systems Analyst classification "[m]ost computer systems analysts have a bachelor's degree in a computer-related field" to evidence that a bachelor's degree or its equivalent is normally the minimum requirement for entry into the particular position.

26. Among other evidence, Wacker submitted a second supporting letter further elaborating that the minimum educational requirement for the IT Support Engineer-MES position was a Bachelor's degree in computer science or a related field, and the job duties require "skilled judgment, demand comprehensive knowledge to fully analyze, test, and implement solutions in real time to address needs of WCC production operations."

27. The RFE response letter also provided a much more detailed and robust position description, which described the role in significant detail, including the specific tasks to

perform, and the skills and knowledge required to perform each job duty along with a percentage of time the beneficiary would spend on each job duty.

28. The RFE response letter identified 17 job advertisements that were representative of positions similar to Wacker's IT Support Engineer -MES position at companies similar to Wacker. The letter confirmed the names of the companies along with the minimal education requirements for the position. The RFE response also included the description of each of the advertised positions.

29. The RFE response letter detailed the unique multi-tiered technical, automation, and manufacturing systems operating within Wacker that require management by the IT Support Engineer-MES position, the beneficiary's significant authority for discretionary decisions to ensure uninterrupted operations for a 24 x 7 commercial manufacturing facility, and articulated the complexities of the MES project requirements and responsibilities to evidence that the position of IT Support Engineer-MES with Wacker's operations is significantly more complex than it would be for a comparable employer, making the specialized degree requirement essential.

30. The RFE response letter also identified a prior job positing for the position which listed the minimum education requirements for the role as a Bachelor's degree. The RFE response letter identified the only other person hired by Wacker into the position in the United States and demonstrated that the individual also held a Bachelor's degree in a related field (Electrical Engineering), and the RFE response letter confirmed that similar specialized degree requirements are imposed by Wacker's German workers employed in comparable positions.

31. Wacker's RFE response included testimony from an expert who evaluated Mr. Channaiahnapalya's education and degree and concluded that "Mr. Channaiahnapalya has

9

Case 1:19-cv-00129 Document 1 Filed 05/02/19 Page 9 of 16 PageID #: 9

earned the education equivalent of a Bachelor's degree in Computer Information Systems based upon his academic education and his progressive employment experience."

32. On December 28, 2018, Defendant USCIS issued a decision denying Wacker's H-1B petition. The decision acknowledged that the position fell within the Computer Systems Analyst occupation as listed in the Department of Labor's Occupational Outlook Handbook but found that it was not a "specialty occupation."

33. In assessing whether a position meets the first criterion, i.e., that a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position, USCIS adjudicators routinely consult the Occupational Outlook Handbook ("OOH").

34. USCIS recognizes the OOH as an authoritative source on the duties and educational requirements of certain occupations.

35. The OOH is a DOL reference manual, updated every two years, which provides profiles about hundreds of occupations that represent a majority of the jobs in the United States. The occupational profiles describe, among other details, the typical education and training needed to enter the occupation.

36. The O*Net is the "Occupational Information Network," which a state agency has developed and maintained under a DOL grant and contains crosswalks to the OOH. The O*Net database is based on "Standard Occupational Classifications and, as described on its website, "contain[s] hundreds of standardized and occupation-specific descriptors on almost 1,000 occupations covering the entire U.S. economy." For occupations that O*Net has listed separately, such as computer systems analyst, O*Net has a "Job Zone" category, which includes

an education entry. Computer systems analyst are in "Job Zone 4: Considerable Preparation Needed."

38. The denial notice from USCIS specifically notes that the OOH states "most computer systems analysts have a bachelor's degree in a computer-related field … some employers prefer applicants who have a master's degree in business administration (MBA) with a concentration in information systems. For more technically complex jobs, a master's degree in computer science may be more appropriate."

38. USCIS's denial notice relies heavily on the OOH statement that "although many computer systems analyst positions normally require a bachelor's degree in a specific specialty, such a degree is not always a requirement. Many analysts have liberal arts degrees and have gained programming or technical expertise elsewhere."

39. USCIS's denial notice fails to give appropriate weight to the OOH statements that "most" computer systems analyst positions do in fact require a degree.

40. With respect to the first regulatory criterion, 8 C.F.R. § 214.2 (h)(4)(iii)(A)(1), USCIS incorrectly imposes the need for an individualized showing that the employer's position satisfies the specialty occupation definition, when what is required under this criterion is a showing that a "bachelor's or higher degree or its equivalent is *normally* the minimum requirement for entry into the particular position."

41. USCIS also misreads the OOH and the O*Net in analyzing the first regulatory criterion and fails to properly consider and credit Plaintiff Wacker's evidence.

42. As to the second regulatory criterion — that the degree requirement is common to the industry in parallel positions among similar organizations — USCIS concluded that the degree requirements in the job listings did not indicate that job duties as advertised were similar

11

to those of the offered position. USCIS also held that it was unable to discern whether the offered position is parallel to the positions for which job announcements were included. USCIS misrepresents Wacker's position as generalized in nature.

43. The record evidence, ignored by USCIS, demonstrates that similarly situated employers, advertising to jobs that are similar to the one offered by Wacker, require at least a bachelor's degree in a specific field in order to enter into the position.

44. The third criterion for an H-1B specialty occupation is that the employer normally requires a degree or equivalent for its position. In the RFE, USCIS requested Wacker to submit additional evidence on this point, including documentary evidence of past employment practices for the position.

45. In response to the request from USCIS, Wacker submitted a resume of the one individual who is the only other person in the U.S. who holds (or has held) the same position as the offered position which documents this person also holds a bachelor's degree in a specialized field. The letter of support provided by Wacker as part of the RFE response also substantiated the hiring practices for the same position in Germany and indicated that Wacker's "requirement of at least a bachelor's degree in computer science or a related field for employees in this position is evident in its past hiring practices and posting notices and supported by the typical hiring practices for similar positions with comparable employers."

46. USCIS mistakenly does not accord any weight to Wacker's job requirements and the submitted evidentiary support and states "your opinion alone cannot establish the position as a specialty occupation."

47. USCIS's interpretation renders the third criterion meaningless by indicating that it cannot accept evidence of Wacker's normal practice as sufficient — notwithstanding the plain language of the regulation.

48. Additionally, USCIS has not provided due consideration of the fact that Wacker filed its LCA as a Level IV, the highest prevailing wage for the occupation, based on the job's minimum education and experience requirements.

49. As to the fourth regulatory criterion — that the nature of the specific duties are so specialized and complex that the knowledge required to perform the duties is usually associated with attaining a bachelor's or higher degree, 8 C.F.R. § 214.2 (h)(4)(iii)(A)(4) — USCIS again mischaracterizes (or ignores) the evidence as providing only a "generalized and abstract" job description.

50. USCIS also stated that Wacker failed to demonstrate how its duties were more specialized and complex than those normally performed by Computer Systems Analysts. The fourth criterion does not require any such comparison, and USCIS's contention is undercut by its earlier acknowledgement that the OOH does not preclude a particular computer systems analyst from qualifying as a specialty occupation.

51. Wacker met the fourth criterion with evidence demonstrating the specialized and complex nature of its job duties, including an explanation of how the education requirement is utilized to perform the job duties.

52. Under 5 U.S.C. §§ 702 and 704, Wacker has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action.

# COUNT ONE

## Violation of the Administrative Procedure Act
## 5 U.S.C. § 701, et seq.

53. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations in paragraphs 1-52 above.

54. Plaintiff is entitled to review by this Court pursuant to 5 U.S.C. §§ 701-706.

55. A reviewing court shall "hold unlawful and set aside agency action . . . found to be — arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

56. Defendants denied the 2018 H-1B Petition solely on the ground that the evidence in the record was insufficient to establish that Plaintiff Wacker's IT Support Engineer-MES position is in a specialty occupation.

57. Plaintiff Wacker submitted evidence demonstrating that the position satisfied all four of the regulatory criteria for demonstrating a specialty occupation. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

58. Defendants failed to properly consider all record evidence; reached factual conclusions unsupported by any evidence in the record; misconstrued the governing regulations; and erroneously concluded that Plaintiff Wacker had not demonstrated that the IT Support Engineer-MES position qualified as a specialty occupation.

59. Defendants' errors, singly and in combination, were arbitrary, capricious, and in violation of the law. Consequently, Defendants acted arbitrarily, capriciously, and contrary to the law in violation of the APA by denying Plaintiff Wacker's 2018 H-1B Petition.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

60. Declare that Defendants' determination that evidence submitted by Plaintiff Wacker was insufficient to establish that the IT Support Engineer-MES position is in a specialty occupation is arbitrary and capricious, and not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A);

61. Declare that the evidence submitted by Plaintiff Wacker was sufficient to establish that the IT Support Engineer-MES position is in a specialty occupation in accordance with law;

62. Vacate the denial of the 2018 H-1B Petition and remand this matter to Defendants with instructions to approve the Form I-129, Petition for Nonimmigrant Worker filed by Plaintiff Wacker, within ten days of the date of the Court's Order;

63. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and,

64. Grant such other relief as the Court deems just, equitable, and proper.

Dated: May 2, 2019	Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By:	s/ Cameron S. Hill
	Robert C. Divine (TN BPR #013211)
	Cameron S. Hill (TN BPR #017408)
	Melanie C. Walker (TN BPR #030037)
	633 Chestnut Street
	Suite 1900
	Chattanooga, TN 37450
	Phone: 423-209-4201
	Fax: 423-752-9560
	rdivine@bakerdonelson.com
	chill@bakerdonelson.com
	mwalker@bakerdonelson.com

*Attorneys for Plaintiff*